UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| TREVION SPRINGER and ROBERT TROYER, on behalf of themselves and all others similarly situated, | ) ) ) ) | CASE NO.: 2:23-cv-10350-SJM-APP |
| | ) ) | HONORABLE JUDGE STEPHEN J. MURPHY, III |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF** |
| KIRCHHOFF AUTOMOTIVE USA, INC., | ) ) ) | **DISMISSAL WITH PREJUDICE** |
| Defendant. | ) | |

## I.    INTRODUCTION

Representative Plaintiffs Trevion Springer and Robert Troyer, on behalf of themselves and all Opt-In Plaintiffs (collectively "Plaintiffs"), and Defendant, Kirchhoff Automotive USA, Inc., ("Defendant" or "Kirchhoff") respectfully move this Court to approve the proposed Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

The proposed settlement will resolve *bona fide* disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.  Plaintiffs asserted that Defendant unlawfully failed to pay its hourly, non-exempt employees, including Plaintiffs, for all time worked and overtime

compensation for all of the hours they worked over 40 each workweek.  Defendant denied all allegations that it violated the FLSA.

If approved by the Court, the Settlement will provide for the issuance of Individual Payments within twenty-one (21) calendar days of approval by this Court.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel, and reached on April 22, 2025, with the assistance of a well-known and respected mediator.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit 1:   Joint Stipulation of Settlement and Release

Exhibit 2:   Declaration of Chastity L. Christy

Exhibit 3:   Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Action

On February 9, 2023, Trevion Springer filed this Action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and alleged that Defendant unlawfully failed to pay its hourly, non-exempt employees, including Plaintiff, for all time worked and overtime compensation for all of the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201-219.  (Doc. 1.)

On May 9, 2024, Plaintiff filed a stipulated Amended Complaint adding Robert Troyer as the Representative Plaintiff, alleging the identical claims. (Doc. 27.)   Specifically, Plaintiffs allege that they and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times, and were not paid for the following work performed before and after their scheduled start and stop times: (a) obtaining and changing into and out of personal protective equipment including, *inter alia*, ear plugs, gloves, safety glasses, a shirt, and/or sleeves; (b) walking to their assigned work area; and/or (c) performing manufacturing work that was identical to the work they performed between their scheduled start and stop times.

The Parties engaged in "similarly situated" discovery between January 2024 and April 2024.  During that time relevant and extensive documents were exchanged,

formal Answers and Responses to Interrogatories and Requests for Production of Documents were exchanged, and the depositions of Representative Plaintiffs and existing Opt-In Plaintiffs were taken.  (Ex. 2, Declaration of Chastity L. Christy, ¶ 18.)

On May 16, 2024, the Parties filed their Joint Stipulation to Issue Notice to Potential Opt-In Plaintiffs.  (*Id*. at ¶ 19.)

On May 29, 2024, this Court issued its Order permitting Plaintiffs to issue notice.  (Doc. 28.)  Pursuant to the Parties' Stipulation and this Court's Order, Plaintiffs' Counsel issued Notice via regular U.S. Mail on June 24, 2024, to the following Class:

> All former and current non-exempt manufacturing employees of KIRCHHOFF Automotive USA, Inc. employed at the Tecumseh, MI and/or Waverly, OH facilities at any time between March 30, 2020 and the present.

(*Id*. at ¶ 20.))   The Opt-In Period ended on August 8, 2024.  (*Id*.)

Between September 2024 and April 2025, the Parties engaged in formal comprehensive exchanges of information, including extensive formal discovery, regarding Plaintiffs' claims and Defendant's defenses to such claims.  (*Id*. at ¶ 22.) This included the production of time and pay data of Plaintiffs and Opt-In Party Plaintiffs and the calculations of Plaintiff's and the Opt-In Party Plaintiffs' alleged overtime damages.  (*Id.*)   Moreover, relevant and extensive documents were exchanged, formal Answers and Responses to Interrogatories and Requests for

Production of Documents were exchanged, and the depositions of additional multiple Opt-In Plaintiffs were taken. (*Id*.)

Since the filing of this matter, the Parties engaged in extensive legal discussion and correspondence and litigation. (*Id*. at ¶ 26.)

### B.    Negotiation of The Settlement

Between April 10, 2025, and April 21, 2025, the Parties engaged in extensive settlement negotiations. (*Id*. at ¶ 28.) On April 15, 2025, and April 21, 2025, the Parties participated in mediation sessions with Dennis A. Clifford, a well-respected mediator, who is well versed in FLSA cases. On April 22, 2025, the Parties reached an agreement to settle the Action on the terms set forth in the Settlement Agreement attached as Exhibit 1. (*Id*.) The Parties reached the proposed settlement in this matter after extensive research, legal debates, litigation, discussions, and correspondence, and after good faith bargaining. (*Id*.)

### C.    The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiffs and the 168 Opt-In Party Plaintiffs ("Plaintiffs").

The Total Settlement Amount is Three Hundred and Fifty Thousand Dollars ($350,000.00), which sum will cover and include separate payments for: (a) all of the Individual Payments to Plaintiffs; (b) Representative Plaintiffs' Representative Payments; and (c) Plaintiffs' Counsel's attorneys' fees and expenses.

Two Hundred Twenty-Three Thousand One Hundred One Dollars and Fifty-Seven Cents ($223,101.57) will be allocated to Plaintiffs for payment of overtime compensation and liquidated damages and will be divided into Individual Payments to Plaintiffs. The Individual Payments were calculated proportionally on each Plaintiff's alleged overtime damages during the Released Period. The Individual Payments are provided in Appendix 1 of the Settlement.

Three Thousand Dollars ($3,000.00) will be paid to Representative Plaintiffs Trevion Springer and Robert Troyer ($1,500 each), in addition to their Individual Payment, for their extensive service as the Representative Plaintiffs, as well as for signing mutual releases of claims. In addition, One Hundred Sixteen Thousand Six Hundred Sixty-Six Dollars and Sixty-Six Cents ($116,666.66) will be paid to Plaintiffs' Counsel for attorneys' fees and $7,231.77 for costs expended in the action, including the out-of-pocket costs associated with the filing fee, administering the Notice to the Class, and the cost of the mediator.

In exchange, the Action will be dismissed and the Plaintiffs will release Defendant from all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses pursuant to the Fair Labor Standards Act ("FLSA") as alleged in the Complaint for the Released Period.

III.    **THE PROPRIETY OF APPROVAL**

The proposed Settlement is subject to approval by the Court pursuant to §

216(b) of the FLSA.  As shown in the attached Declaration of Chastity L. Christy,

and as explained below, Court approval is warranted on all scores.

A.    **The Seven-Factor Standard Is Satisfied**

The court presiding over an FLSA action may approve a proposed settlement

of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness."

*Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June

16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-

55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and

reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S.

108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court

to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar

to the need for a court to determine that any class-action settlement is 'fair,

reasonable, and adequate.'"    *Crawford v. Lexington-Fayette Urban County

Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).  The Sixth Circuit

uses seven factors to evaluate class action settlements, and the *Crawford* court

applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely
> duration of the litigation; (3) the amount of discovery engaged in by the

7

parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Christy Declaration (*see* Exhibit 2), the standard supports approval of the Settlement.

### 1)   No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating claims under the FLSA, 29 U.S.C. §§ 201-219, including claims for unpaid hours worked and overtime compensation.  The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the assistance of a well-respected mediator.  As such, there is no indicia of fraud or collusion.

### 2)   The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex wage and hour cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  While the Parties agreed that the two-year statute of limitations applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA.  (Ex. 2, ¶ 31.)

8

Defendant claims that even if Plaintiffs could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. (*Id*.)   In addition, the Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA.  (*Id*.)   Further, the Parties disagreed about whether Plaintiffs were owed any additional money for pre- and/or post-shift work, as Defendant claimed it was entitled to offsets for paid lunches and breaks. (*Id.* at ¶ 32.)  Finally, the Parties disagreed as to whether Plaintiffs were similarly situated.

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling.  (*Id.* at ¶ 44.)   The Parties would be required to engage in extensive briefing regarding whether the Plaintiffs were similarly-situated and summary judgment.  (*Id*.)   Continued discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties.  (*Id.*)  The Parties have already engaged in active litigation of this matter for over two (2) years.  The Settlement, on the other hand, provides substantial relief to Representative Plaintiffs and Opt-In Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (*Id.*)

### 3) Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation and discovery prior to negotiating the Settlement Agreement. (*Id.* at ¶¶ 18, 22.) Relevant information was exchanged, including a complete analysis of each Plaintiff's alleged overtime damages with respect to the claims alleged in the lawsuit. (*Id.*) The Parties engaged in formal discovery, including written Interrogatories and Requests for Production of Documents. (*Id.* at ¶ 22.) The Parties exchanged significant documentation and Defendant took the depositions of Plaintiffs Trevion Springer, Robert Troyer, Jeffrey Conley, Jeffrey Scott, Ralph Nunley, Adrian Dillard, Dawn Kendall, Joshua Anderson, Roberta Rutledge, and Damien Dill. (*Id.*)    In addition, Plaintiff's Counsel obtained investigation notes from Plaintiffs, and the legal issues in the case were thoroughly researched and argued by counsel for the Parties. (*Id.* at ¶ 23.) All aspects of the dispute are well-understood, and were vehemently argued and litigated, by both sides. (*Id.* at ¶ 27.)

### 4) The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984).  Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success during summary judgment and at trial.  Plaintiffs' claims are based on disputed issues of fact and law

and Plaintiffs' success at trial is not guaranteed.  In sum, although Plaintiffs assert that the claims are meritorious, the action certainly is not without risk.  This factor thus weighs in favor of approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result.  Moreover, in the present case, Defendant raises affirmative defenses to Plaintiffs' claims and damages, and the outcome of those defenses is uncertain as well.  Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

Plaintiffs' range of possible recovery is also open to dispute.  (*Id.* at ¶¶ 37, 41, 48.) Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.  (*Id.* at ¶ 48.) Even if Plaintiffs were to succeed on the merits, there is the possibility that this Court or a jury would find that Plaintiffs' damages should be calculated at less than the amount of the recovery in this Settlement.  (*Id.*)  This Court or a jury could also find that Defendant did not act willful, and thus a two (2) year statute of limitations would apply.  (*Id.*) Further, a jury could find that Defendant acted in good faith, and thus no liquidated damages would be awarded.  (*Id.*)  Finally, this Court or a jury could find that Defendant should be provided an offset for paid lunches and breaks.  (*Id.*)  All of these scenarios would result in a monetary award of less than the amount

11

obtained through this settlement. (*Id.*)

### 5) Counsel and Class Representatives Favor The Settlement

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiffs' Counsel believes the settlement is fair, reasonable, and adequate. (*See* Exhibit 2.) Plaintiffs' Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their clients in negotiating the settlement. (*Id.*) Representative Plaintiffs have been fully informed and agree to the settlement. (*Id.* at ¶ 42.) *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom*. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### 6) The Reaction of Absent Class Members

The absence of class member objection indicates that the class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). Unlike a Rule 23 Class Action settlement, each Opt-In Plaintiff has chosen to Opt-In to this Action already and to designate Representative Plaintiffs and Plaintiffs' Counsel as their

representatives for purposes of any settlement at the time they signed and submitted their respective consent forms.  Other members of the class who did not opt into this Action are not included in the settlement or bound by it.

### 7)    Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).  The settlement ends complex litigation that has been pending for over two (2) years and provides substantial relief to Plaintiffs and avoids protracted, costly litigation.   *See Brotherton*, 141 F. Supp. 2d at 905-06.  The terms of the settlement are equitable and provide a reasonable resolution of the action.  As detailed below, each Plaintiff will receive approximately 111% of their unpaid overtime compensation damages for approximately the 3-year statute of limitations period for approximately 15 extra minutes per shift or 164% of their unpaid overtime compensation damages for 10 extra minutes per shift. (Ex. 2 at ¶ 39.)  Continued litigation would serve to increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the Opt-In Plaintiffs. (*Id.* at ¶ 50.)  In fact, rulings by this Court or a verdict by a jury could result in a significantly less recovery for Plaintiffs if this Court or a jury were to rule in favor of Defendant on certain disputed issues of fact and law. (*Id.* at ¶ 48.)

13

**B.** **The Settlement Distributions Are Fair, Reasonable and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiffs and Opt-In Plaintiffs.

All Individual Payments have been calculated proportionally on each Plaintiff's alleged overtime damages during the Calculation Period. The Calculation Period for Plaintiffs shall mean the period between April 2020 and August 2024. (*Id*. at ¶ 38.) In calculating the damages, Plaintiffs were credited for working an extra 5, 10, 15, or 20 minutes of pre- and post-shift donning and doffing work per day. (*Id*. at ¶ 39)

During the Calculation Period, Plaintiffs were allegedly denied $266,526.12 in overtime compensation for 20 extra minutes of pre- and post-shift work per day; $201,114.71 in overtime compensation for 15 minutes per day; $136,361.77 in overtime compensation for 10 minutes per day; or $72,351.28 in overtime compensation for 5 minutes per day, pursuant to Plaintiffs' Counsel's calculations. (*Id*. at ¶ 37.) If approved by the Court, the Proposed Settlement will provide

adequate payments to the Plaintiffs for unpaid overtime compensation as they will receive $223,101.57.  Pursuant to the Settlement amount, each Plaintiff will receive approximately 84% of their overtime compensation for 20 extra minutes per day; 111% of their overtime compensation for 15 extra minutes per day; 164% of their overtime compensation for 10 extra minutes per day; or 308% of their overtime compensation for 5 extra minutes per day.  (*Id*. at ¶ 39.)

Given that Defendant claims: (1) Plaintiffs cannot show willfulness to allow for a 3-year statute of limitations; (2) it has a good-faith defense that would exclude liquidated damages being awarded; (3) Defendant should receive an offset for paid lunches and breaks; and (4) Plaintiffs are not similarly situated, the Parties reached agreement by resolving *bona fide* disputes. (*Id*. at ¶ 41.) Accordingly, the settlement proceeds are fair, reasonable and adequate.

## C.   Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff and the class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys

15

who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at \*6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee in this matter.

The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Opt-In Plaintiffs.  In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

In determining the reasonableness of a fee award, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at \*4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic

16

> Research Associates, an economics consulting firm.  The data
> is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M.
> Juneja, Denise N. Martin, Recent Trends III: What Explains
> Settlements in Shareholder Class Actions? (NERA, June 1995)
> (hereinafter "NERA Study").

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average result achieved for class members was only 7% to 11% of claimed damages.  Measured against that standard, the settlement in the present case is exemplary.  The allocation to the Plaintiffs represents over 100% of their overtime compensation for 15 minutes of extra time per shift provided.  (*Id.* at ¶ 39.)

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).  The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

In Ohio, the preferred method is to award a reasonable percentage of the fund. See *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted).  In *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014),

the Court found that "the percentage approach is the most appropriate method for determining reasonable attorneys' fees" and awarded 33%, or $1,320,000, of the $4,000,000 settlement fund to class counsel.  In doing so, this Court found:

> Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07–cv–430, 2011 WL 2532922, at *4 (S.D.Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

*Id*. at *6.

In *Dillow v. Home Care Network, Inc*., No. 1:16-CV-612, 2018 WL 4776977, at *4 (S.D. Ohio Oct. 3, 2018), the Court found, against the defendant's objection, that the percentage of the fund approach is the most appropriate and that the plaintiff's fee request was "reasonable and well within the ranges of fees typically approved by courts in the Sixth Circuit." *Id.* at *5 (citing *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 380-81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001) ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), rev'd on other grounds, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund")).

Here, Plaintiffs request that the Court use the percentage method and award

one-third of the settlement fund in attorneys' fees, particularly in light of the fact that Plaintiffs are receiving a very high recovery of their overtime damages, after deduction of the one-third attorneys' fees and costs.

In FLSA collective actions in the Sixth Circuit, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case.")[1] This practice is in accord with the practice throughout the Sixth Circuit and nationwide.

Plaintiffs' Counsel took this case on a contingency fee and advanced all costs associated with the case.  (Ex. 2*, ¶* 45.)  Had this case not settled, Plaintiffs' Counsel

---

[1]      *See also Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (awarding one-third of the fund); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (awarding 33 percent of $4 million settlement fund in wage and hour case); *Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of $450,000 fund).

would have continued to vigorously litigate the case without any promise of success and compensation.  (Ex. 2*,* ¶ 47.) At every step of the litigation, Defendant could have succeeded on certain legal issues.  (*Id*.)   If Defendant were to be successful on its arguments regarding credit for the offsets and that the 2-year statute of limitations applies, Plaintiffs' overtime compensation could have been reduced to a minimal recovery.  (*Id.* at ¶ 51.)   Therefore, Plaintiffs were at risk of a non-payment or a payment of significantly less than they will receive in this matter if the settlement is approved.  (*Id.*)  This risk of a reduced payment, and no payment, strongly supports the amount requested here.  (*Id.*)

Plaintiffs' Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses.  (*See* Exhibit 2.) Plaintiffs' Counsel has worked diligently in representing Plaintiffs and Opt-In Plaintiffs for over two (2) years, engaging in extensive litigation.  Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant.  (*Id.* at ¶ 46.)  This included interviewing and obtaining declarations from putative class members.  (*Id.*)  Moreover, Plaintiffs' Counsel: (1) drafted and filed extensive briefing with this Court throughout the duration of this litigation; (2) drafted, filed, and administered the Notice to the Class; (3) engaged in extensive research, discussions, and written communications with Defense Counsel;

(4) reviewed and analyzed the time and pay records of Plaintiffs, documents from Plaintiffs' personnel files, the Collective Bargain Agreements, Defendants' various policies and procedures, etc.; (5) performed all of Plaintiffs' damages calculations; (6) submitted and answered written Interrogatories and Requests for Production of Documents propounded on Plaintiffs; (7) prepared Plaintiffs for their depositions; (8) attended all of Plaintiffs' depositions; (9) attended various Court conferences; (10) attended two (2) mediation sessions; (11) negotiated this Settlement after extensive settlement negotiations; and (12) drafted this Motion and all supporting documents attached hereto.  (*Id.* at ¶ 46.)  The fees requested are significantly less than Plaintiffs' Counsel's lodestar after more than two (2) of representing Plaintiffs. (*Id.* at ¶ 43.)

The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $7,231.77, which includes the cost of the filing fee, administration of the Notice to all putative class members, and the mediator's fee.  (*Id.* at ¶ 55.)  All expenses were incurred during the course of the litigation of this Action. (*Id.*)

### D.    The Service Awards to Representative Plaintiffs are Fair and Reasonable

The Settlement contemplates providing a $1,500 Service Award to each Representative Plaintiff Trevion Springer and Robert Troyer.  Service awards to representative plaintiffs recognizing the value of his or her services on behalf of

other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Counsel's Declaration (*see* Exhibit 2) establishes that the proposed Service Award is proper and reasonable. (Ex. 2, ¶ 42.) Representative Plaintiffs' services were effective. (*Id*.) They provided extensive factual information to Plaintiffs' Counsel and faithfully engaged in numerous and extensive calls and other communications with Plaintiffs' Counsel. (*Id*.) Moreover, they attended their depositions, answered written discovery requests, and subjected themselves to the responsibilities of serving as Representative Plaintiffs in a lawsuit against their former employer. (*Id*.) The requested payment is proportional to service payments awarded to plaintiffs in other FLSA actions. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.,* No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.,* No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff)*; Arledge v. Domino's Pizza, Inc.,* No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Coleman v. Trophy Nut Co.,* Case No. 3:19-cv-374 (S.D. Ohio Feb. 17, 2021 (Rose, T.)(awarding $2,500 service payment)(; *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014)

(awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

## IV.   **CONCLUSION**

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 3.

Respectfully submitted,

| | |
|---|---|
| /s/ *Chastity L. Christy* | /s/*Jeffrey R. Vlasek* |
| Chastity L. Christy (0076977) | Gregory V. Mersol (OH 0030838) |
| Anthony J. Lazzaro (0077962) | Jeffrey R. Vlasek (OH 0082771) |
| The Lazzaro Law Firm, LLC | Baker & Hostetler LLP |
| The Heritage Building, Suite 250 | Key Tower |
| 34555 Chagrin Boulevard | 127 Public Square, Suite 2000 |
| Moreland Hills, Ohio 44022 | Cleveland, OH 44114 |
| Phone: 216-696-5000 | Telephone: (216) 621-0200 |
| Facsimile: 216-696-7005 | Facsimile: (216) 696-0740 |
| chastity@lazzarolawfirm.com | gmersol@bakerlaw.com |
| anthony@lazzarolawfirm.com | jvlasek@bakerlaw.com |
| | |
| *Attorneys for Plaintiffs* | Melissa M. Tetreau (P80864) |
| | Rebecca Seguin-Skrabucha (P82077) |
| Jennifer L. McManus (P65976) | BODMAN PLC |
| Fagan McManus, P.C. | 201 W. Big Beaver Road, Suite 500 |
| 25892 Woodward Avenue | Troy, MI 48084 |
| Royal Oaks, MI 48067-0970 | (248) 743-6000 |
| Phone: 248-542-6300 | |
| jmcmanus@faganlawpc.com | *Attorneys for Defendant* |
| | |
| *Local Counsel for Plaintiffs* | |

## LOCAL RULE CERTIFICATION

I, Chastity L. Christy, certify that this document complies with E.D. Mich. L.R. 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Chastity L. Christy*
Chastity L. Christy (OH 0076977)
*One of the Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2025, a copy of the foregoing was sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.

/s/ Chastity L. Christy
*One of the Attorneys for Plaintiffs*